**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JAMES and SANDRA LINDQUIST, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-06-1975 |
| | § | |
| THE CITY OF PASADENA, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Plaintiffs James and Sandra Lindquist sued the City of Pasadena, Texas after the City Council affirmed the City building official's denial of an application for a used-car dealer license at a location the Lindquists owned. The City Council denied the Lindquists a license under a municipal ordinance that required each new license location for used-car sales lots to be certain distances from any currently licensed lot and from residential areas or subdivisions. The Lindquists allege that the denial of their license application violated the Due Process and Equal Protection Clauses of the Federal and Texas Constitutions.

The City moved to dismiss the Lindquists' original complaint for failure to state a claim. (Docket Entry No. 9). The Lindquists filed an amended complaint, (Docket Entry No. 14), and a response to the motion to dismiss, (Docket Entry No. 15). The City replied, (Docket Entry No. 17), the Lindquists surreplied, (Docket Entry No. 20), and the City filed a rebuttal, (Docket Entry No. 21). This court has carefully reviewed the pleadings, the

motion, responses, and replies, and the applicable law. Based on that review, this court grants the motion to dismiss. The reasons are set out below.

**I.     Background**

In 2004, the City of Pasadena rejected the Lindquists' request for a used-car dealer license for a lot they owned at 4646 Spencer Highway. That lot did not comply with the City ordinance requirements for such a license. The relevant Motor Vehicle Dealers Ordinance provisions are as follows:

> Each new license location is required to be a minimum of one thousand (1,000) feet from any existing license location as measured from nearest property line to nearest property line.

PASADENA, TEX., CODE OF ORDINANCES ch. 22, art. II, § 22-22(c)(16) (2003) (the "1,000-foot rule").

> There shall not be issued a new license for the operation of a used car lot within one hundred fifty (150) feet of the lot lines of a residential area or subdivision.

*Id.* § 22-22(c)(4) (the "150-foot rule"). A grandfather clause permits a license for a dealership operating at the same location and continuously licensed for a certain period or for multiple dealerships licensed with no more than a sixty-day interruption of sales. The 1,000-foot rule provision allows licenses for selling classic cars on a lot that falls under the rule.

If the City building official who determines licensure of used-car dealerships denies an application, the applicant may appeal to the City Council. *Id.* § 22-29. The appeal provision states:

> The hearing before the council shall be de novo and the applicant shall have the burden of proving that he is entitled to the license. At such hearing, the council shall have the right and authority to consider the information obtained by the chief of police . . . when investigating the applicant and also any report or statement of facts prepared by the city building official in connection with the matter. . . . After such hearing, the council shall decide, by motion, whether or not the license applied for shall be granted or refused.

*Id.* § 22-29(b).

In their amended complaint, the Lindquists allege that they had a used-car dealer license at one location and wanted to expand their operation. Before they purchased the lot at 4646 Spencer Highway, they had conversations with City officials about purchasing a second lot to sell used cars. They talked to City officials about two lots, one at 4545 Spencer Highway and a second at 4646 Spencer Highway. City officials told the Lindquists that both lots fell under the 1,000-foot rule. The 4646 Spencer Highway location was within 1,000 feet of one competitor and the 4545 Spencer Highway location was within 1,000 feet of two competitors. The City officials also told the Lindquists that the 4545 Spencer Highway location was within 150 feet of a residential area. The City officials told the Lindquists that although the 4545 Spencer Highway location had previously been used as a used-car lot, it did not qualify for the grandfather clause. Knowing this information, the Lindquists bought the lot at 4646 Spencer Highway. The City issued a license to the Lindquists to sell boats, motorcycles, travel trailers, golf carts, ATVs, classic cars, and classic trucks, but did not issue them a full used-car dealer license for the 4646 Spencer Highway location.

The Lindquists allege that after they bought the lot, a couple doing business as Kar-Mart bought the lot at 4545 Spencer Highway. City officials denied Kar-Mart a used-car dealer license under the ordinance. The couple appealed the denial to the City Council, which reversed the City officials' decision and voted in favor of the license. The day after that decision, the Lindquists applied for a used-car dealer license for 4646 Spencer Highway. The City officials denied the license application and the Lindquists appealed. The City Council affirmed the City officials' denial. The Lindquists allege that some City Council members complained about the unfairness of the decision, given that both the Lindquist lot and the Kar-Mart lot violated the ordinance. The Lindquists point out that their lot was more compliant than Kar-Mart's lot because it only violated the 1,000-foot rule, while the Kar-Mart lot violated both the 1,000- and the 150-foot rules.

The following month, the City Council considered another appeal for a used-car dealer license from an applicant seeking to operate a lot on Preston Road in Pasadena. That site violated the 150-foot rule. The City official denied the license application and the applicant appealed to City Council. In August 2006, the City Council granted the license. The Lindquists allege that same City Council members again protested and expressed concern about favoritism shown to applicants who had involved particular persons in the process. (Docket Entry No. 14 at 7, 9).

In this suit, the Lindquists allege that the following aspects of the City's licensing of used-car sales lots violates the United States and Texas Constitutions:

1.      The City has "unbridled discretion" to approve or deny licenses.

4

      2.      The City denied the Lindquists' application while approving two others that were similarly situated, with no rational basis for the different treatment, violating equal protection.

      3.      The City arbitrarily grants or denies used-car dealer licenses, in violation of due process. The City's failure to provide fair notice of a right to appeal when officials tell potential dealers that their sites do not qualify for licenses also violates due process.

The City moves to dismiss both the equal protection and due process claims. Each is analyzed below.

## II.    The Legal Standard for a Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). This strict standard of review under Rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969); *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "In order to avoid dismissal for failure to state a claim,

however, a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (citation and quotation marks omitted).

## III.     The Unbridled Discretion Claim

The Lindquists assert that the ordinance gives City Council "unbridled discretion" to decide which used-car dealer licenses to approve, violating the Texas Constitution and contributing to the equal protection and due process violations under the Texas and Federal Constitutions. The Lindquists rely on *Spann v. City of Dallas*, 235 S.W. 513 (Tex. 1921), and *Railroad Commission v. Shell Oil Co.*, 161 S.W.2d 1022 (Tex. 1942), in support of their argument.

In *Spann*, the Texas Supreme Court stated that:

> Since the right of the citizen to use his property as he chooses so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for the abridgment of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare. A law which assumes to be a police regulation but deprives the citizen of the use of his property under the pretense of preserving the public health, safety, comfort or welfare, when it is manifest that such is not the real object and purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensating advantages.

235 S.W. at 515. *Spann* was decided before the U.S. Supreme Court case of *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365 (1926), and a 1927 Texas statute giving

6

cities the power to enact zoning laws. *See* TEX. LOC. GOV'T CODE §§ 211.001 *et seq.* In *Village of Euclid*, the Court stated that a municipal zoning ordinance would survive a substantive due process challenge so long as it was not "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." 272 U.S. at 395. In *City of Brookside Village v. Comeau*, the Texas Supreme Court upheld the village's land-use ordinance regulating the location of mobile homes, stating that in reviewing the police powers of municipalities under the Texas Constitution, a court must presume the ordinance is valid and uphold it unless it is "unreasonable and arbitrary—a clear abuse of municipal discretion." 633 S.W.2d 790, 792 (Tex. 1982) (quoting *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex. 1971)). A party attacking such an ordinance must show that "no conclusive or even controversial or issuable fact or condition existed" that would authorize passage. *Id.* at 792–93 (quoting *Thompson v. City of Palestine*, 510 S.W.2d 579 (Tex. 1974)). The Lindquists do not claim that the ordinance provisions lack an adequate relationship to the City's police powers.

The Lindquists' reliance on *Shell Oil Co.* is also unhelpful. In *Shell Oil Co.*, the Texas Supreme Court stated:

> It is a well-established principle of constitutional law that any statute or ordinance regulating the conduct of a lawful business or industry and authorizing the granting or withholding of licenses or permits as the designated officials arbitrarily choose, without setting forth any guide or standard to govern such officials in distinguishing between individuals entitled to such

7

>               permits or licenses and those not so entitled, is unconstitutional
>               and void.

161 S.W.2d at 1024.

    The ordinance sets out the requirements that City officials are to use to decide whether an applicant is entitled to a license. The ordinance states that when a license application is received, the City building official must forward the application to the chief of police for an investigation that is to include the applicant's criminal record, reputation for honesty and fair dealing, and truthfulness in answering the questions on the application form. The chief of police is to provide that information to the City building official and recommend approval or denial of the license application. PASADENA, TEX., CODE OF ORDINANCES ch. 22, art. II, § 22-26 (2003). The City building official is to consider this recommendation and determine whether the applicant has complied with the ordinance requirements—including the 1,000- and 150-foot rules—and other applicable laws and regulations in determining whether to approve or deny a license. *Id.* § 22-27. In short, the ordinance provides detailed criteria to guide the discretion of the City officials in considering whether to approve or deny used-car dealer license applications.

    The Lindquists argue that the provision allowing an appeal to City Council violates the Texas Constitution because the appeal is *de novo*. The fact that the City Council's hearing is *de novo* does not equate to unfettered discretion in deciding whether to approve or deny a license. To the contrary, the provision setting out the appeal option, Section 22-29, states that the applicant is required to prove his entitlement to a used-car dealer license,

which in turn requires a showing of compliance with the ordinance requirements. The Lindquists' argument that the ordinance is unlawful because it gives unfettered discretion to the City Council is without merit.

## IV. The Equal Protection Claim

"It is well-established that, as a general matter, the Equal Protection Clause of the Fourteenth Amendment requires that all similarly situated persons be treated substantially alike." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 388–89 (5th Cir. 2001) (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)). The courts have recognized two types of selective-enforcement equal protection claims. The traditional claim for selective enforcement requires a plaintiff to allege that "the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000). Under this theory, a plaintiff must allege: (1) that an official has singled out a person belonging to an identifiable group, such as those of a particular race or religion and has enforced the law against that group, but not against others; (2) that the official initiated the enforcement with a discriminatory purpose; and (3) that the enforcement has a discriminatory effect on the group to which the plaintiff belongs. *Id*. (citations omitted).

This first type of equal protection claim does not apply here. The Lindquists have not alleged that they are part of an identifiable group or that the City's enforcement methods had an improper discriminatory effect on a protected group to which they belong. In *Beeler v. Rounsavall*, which also involved a claim of constitutionally infirm licensing decisions under

9

a municipal ordinance, the Fifth Circuit observed that "[t]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003) (citing *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999)). "[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Id.* (citing *Bryan v. City of Madison*, 213 F.3d 267, 276–77 (5th Cir. 2000)). "[I]t must be shown that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* (citing *Allred's Produce*, 178 F.3d at 748).

The Lindquists have not alleged that the City Council based its decision to deny their license application—while approving other applications for lots that violated either or both of the 1,000-foot or the 150-foot rules—on an illegal standard. The Lindquists have alleged that the City Council may have been improperly swayed in favor of other applicants by the involvement in the process of certain influential people. No case recognizes such a motivation as constitutionally improper. In *Beeler*, the court was reluctant even to consider personal vindictiveness as an improper motive that could support an equal protection claim, without some other class-based discrimination. *Beeler*, 328 F.3d at 817–18 (citing *Bryan*, 213 F.3d at 277, n.18). The court observed that the "'text of the Equal Protection Clause, the history leading to its adoption, [and] a century of jurisprudence that has in the main interpreted the clause to prohibit only disparate treatment based upon group or class factors'

suggests that personal vindictiveness by itself is insufficient as an improper motive in the absence of some other class- or group-based discrimination." *Id.* at 818 (internal citations omitted).

The second type of selective-enforcement claim, and the one the Lindquists press, is the "class-of-one" claim. The Lindquists contend that they are in a "class of one," which the City intentionally treated differently than others similarly situated, without a rational basis. In *Village of Willowbrook v. Olech*, the Supreme Court stated that "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000) (citations omitted). In *Olech*, the Court held that a homeowner had made a valid class-of-one claim by showing that the town in which she lived made an "irrational and wholly arbitrary" decision to require a much larger easement over her property to connect to the municipal water supply than the town required of other property owners who sought access to the water supply. *Id.* at 564–65. The municipality conditioned water service for a property on the owner's grant of a 33-foot easement, even though it required only a 15-foot easement from every other property owner. *Id*. at 563. The Supreme Court allowed an equal protection claim to survive a motion to dismiss because the municipality's demand was alleged to be "irrational and wholly arbitrary." *Id.* at 565.

In the wake of *Olech*, the lower courts have struggled to define the contours of class-of-one cases. *See, e.g.*, *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004) (summarizing conflicts). In particular, courts (even within the same circuit) have divided over the role of subjective motivation in class-of-one equal protection cases. *See, e.g.*, *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1211 (10th Cir. 2006) (stating that class-of-one plaintiffs must show that the official action was "objectively irrational and abusive"); *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (suggesting that a class-of-one claim requires persecution due to some animosity but also finding evidence that the official action was objectively unreasonable); *Jennings*, 383 F.3d at 1211–12 (noting the absence of allegations of ill will but basing the decision on the plaintiff's failure to show that the official action lacked legitimate justification); *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 683–84 (7th Cir. 2005) (noting contradictory lines of cases in the Seventh Circuit and reserving the question); *Bizzarro v. Miranda*, 394 F.3d 82, 88 (2d Cir. 2005) (reserving the question); *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) (not requiring proof of an illegitimate motive); *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Finance Corp.*, 246 F.3d 1, 7 (1st Cir. 2001) (requiring subjective bad faith in the equal protection analysis); *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 12 n.4 (1st Cir. 2000) (applying class-of-one analysis without regard to subjective motivation).

The Fifth Circuit requires a plaintiff asserting selective treatment without any rational basis to allege that "an illegitimate animus or ill-will motivated [its] intentionally different

12

treatment from others similarly situated and that no rational basis existed for such treatment." *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002) (per curiam). In this case, the Lindquists do not allege that the City had an impermissible reason for the difference between how it treated them as opposed to how it treated Kar-Mart and the Preston Road applicants. Under the Fifth Circuit's interpretation of the Supreme Court's selective-enforcement jurisprudence, the Lindquists have not alleged the elements of a selective-enforcement claim.

The Lindquists also assert a claim under the Texas Constitution. Equal protection challenges under the Texas Constitution follow the same approach as under the Fourteenth Amendment. *Bell v. Low Income Women*, 95 S.W.3d 253, 266 (Tex. 2002); *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex. 1990); *Richards v. Tex. A&M Univ. Sys.*, 131 S.W.3d 550, 556–57 (Tex. App.—Waco, 2004, no pet.). The Lindquists' equal protection claim under the Texas Constitution also fails.

## V.     The Due Process Claim

To prevail on a claim based on denial of procedural or substantive due process, a plaintiff must make a showing that he has been denied a constitutionally protected property interest. *See Williams v. Tex. Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993); *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993). Such property rights must be established by state law. "Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing

rules, contractual provisions, or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936–37 (5th Cir. 1995) (citing *Perry v. Sindermann*, 408 U.S. 593, 599–601 (1972)). "In order to allege a due process deprivation of a property interest under the Fourteenth Amendment, the plaintiff must demonstrate a 'legitimate claim of entitlement' to that interest." *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564 (1972)).

The facts the Lindquists allege preclude a claim that they had a constitutionally protected right in the used-car dealer license they unsuccessfully sought. The Lindquists knew before they purchased the lot that it did not qualify for use as a used-car dealership under the ordinance's boundary restrictions. They were not deprived of any interest they believed they were acquiring when they bought the parcel. The Lindquists were given a license to use the lot to sell vehicles, just not used cars. The Lindquists' complaint is that two other applicants who had different parcels of land received licenses despite noncompliance with the 1,000- or 150-foot rules. The substantive due process component of the Fourteenth Amendment's Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *McClendon v. City of Columbia*, 305 F.3d 314, 322 n.5 (5th Cir. 2002) (per curiam) (internal quotation marks and citations omitted). The Lindquists' substantive due process argument is the equal protection argument recast in substantive due process terms and cannot proceed.

The Lindquists' procedural due process argument fares no better. The central theme of procedural due process under the Constitution is that parties whose liberty or property rights are affected by governmental action are entitled to notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Property or liberty interests within the meaning of the Due Process Clause must be implicated to trigger due process. As noted, the Lindquists did not have a constitutionally protected property interest in the acquisition of a used-car dealer license. Moreover, the record is clear that the ordinance provided an opportunity to appeal and that the Lindquists did appeal from the City building officials' decision to deny their license application. Although the Lindquists complain that when their license application was initially denied, they were not informed of their right to appeal to the City Council, that right was clearly set out in the same ordinance that governed their application. The Lindquists have failed to plead a due process violation under state or federal law.

**VI.    Conclusion**

Generally, when a court dismisses a complaint under Rule 12, "the court should allow the plaintiff leave to amend his complaint to correct the defect." *La Porte Constr. Co. v. Bayshore Nat'l Bank of La Porte, Tex.*, 805 F.2d 1254, 1256 (5th Cir. 1986). The Lindquists have not sought leave to amend again. There is no basis to conclude that either the federal or the Texas claims can be pleaded to cure their deficiencies. Those claims are dismissed, with prejudice.

This case will be dismissed by separate order.

SIGNED on December 5, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge